Grant RAMSTAD and Margaret Ramstad, Plaintiffs,

v.

**LEAR SIEGLER DIVERSIFIED HOLDINGS CORPORATION, a New Jersey corporation, Defendants.**

Civil No. 4–91–567.

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 1, 1993.

Michael M. Thomas, Kim E. Brust, Conmy Feste Bossart Hubbard & Corwin, Fargo, ND, for plaintiffs.

George W. Soule, Sheryl Anderson Bjork, Bowman & Brooke, Minneapolis, MN, for defendants.

## ORDER

DOTY, District Judge.

This matter is before the court on plaintiffs' motion for a new trial. Based on a review of the file, record and proceedings herein, and for the reasons stated below, the court denies plaintiffs' motion.

## BACKGROUND

On June 10, 1988, Grant Ramstad's ("Ramstad") foot was injured in a grain auger accident which occurred at plaintiffs' farm near Hawley, Minnesota. Ramstad was using the auger to transport barley from a grain bin to a truck. Ramstad placed his foot on the auger near the intake to boost himself over the auger. Ramstad's foot slipped between the bars covering the intake and became caught in the auger flighting. The machine at issue is a Century 8″ portable grain auger, Model No. 8253SCP, which was manufactured between 1968 and 1971 by Hutchinson Division of Royal Industries, Inc. ("Hutchinson"). Lear Siegler Diversified Holdings Corporation is the successor of Hutchinson.

Plaintiffs' brought suit alleging negligence and failure to warn. Hutchinson denied any negligence and claimed that Ramstad's own negligence caused his injuries. A four day jury trial was held in March 1993. At the close of evidence, and upon Hutchinson's motions, the court granted judgment as a matter of law on plaintiffs' claims of failure to warn and continuing duty to warn. The issues of negligent design and contributory negligence were submitted to the jury.

The jury returned a special verdict finding both Hutchinson and Ramstad negligent. The jury apportioned 40 percent of the fault to Hutchinson and 60 percent of the fault to Ramstad and awarded plaintiffs past and future damages. Recovery was precluded, however, by Minnesota's comparative fault statute which bars recovery where the plaintiff's fault is greater than the fault of the defendant. *See* Minn.Stat. § 604.01, subd. 1 (1988).

Plaintiffs move for a new trial asserting a host of errors allegedly committed by the court. Specifically, plaintiffs claim that the court erred by failing to strike certain jurors for cause, by excluding certain testimony and exhibits, by striking certain exhibits, by granting judgment as a matter of law on plaintiffs' claims of failure to warn and continuing duty to warn, by giving and failing to give certain jury instructions, by excluding per diem arguments, by failing to instruct the jury on the legal effect of their apportionment findings, by denying plaintiffs' motion to reopen the evidence, by denying plaintiffs' post-verdict motion to recommit the jury for further deliberations after informing them of the effect of apportioning liability and by denying plaintiffs' motion for a mistrial.

## DISCUSSION

■ A new trial may be awarded under Fed.R.Civ.P. 59(a) only to prevent injustice or when the verdict strongly conflicts with the great weight of evidence. *Fireman's Fund Ins. Co. v. Aalco Wrecking Co.,* 466 F.2d 179, 186 (8th Cir.1972), *cert. denied,* 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592

(1973). Not all errors require a new trial. The court should grant a new trial only if it finds that an error "misled the jury or had a probable effect on its verdict." *E.I. Du Pont de Nemours v. Berkley & Co., Inc.,* 620 F.2d 1247, 1257 (8th Cir.1980). Rule 61 of the Federal Rules of Civil Procedure provides that:

> No error or defect in any ruling or order or in anything done or omitted by the court ... is ground for granting a new trial ... unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

The burden of proving harmful error rests on the party moving for a new trial.

### 1. Challenges to Prospective Jurors

■ Plaintiffs contend the court erred by denying their challenges to prospective jurors Ms. Hornick, Mr. Passe and Mr. Horst. The "touchstone of a fair trial is an impartial trier of fact—'a jury capable and willing to decide the case solely on the evidence before it.'" *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 554, 104 S.Ct. 845, 849, 78 L.Ed.2d 663 (1984) (quoting *Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982)). The court has broad discretion to determine whether a prospective juror qualifies on those grounds.

### A. Overruled Challenges for Cause

■ Plaintiffs claim that the court erred by overruling the challenges for cause to jurors Ms. Hornick and Mr. Passe based on their opinions about what plaintiffs characterize as a "lawsuit liability crisis." Ms. Hornick, a manager of convenience stores, indicated she was annoyed with people who criticized her stores for selling adult items to minors. She did not express any opinion on lawsuits in general. Nor did Ms. Hornick express concern about high verdicts or the effect of litigation on insurance rates.[1] Mr.

---

1. Plaintiffs also rely on Ms. Hornick's statement that, if the roles were reversed and she was a plaintiff, she might not be satisfied with a person

like her as a prospective juror. Defendant objected to the question, claiming that plaintiffs were unfairly attempting to place jurors in the

Passe mentioned the increased costs of litigation on business. Plaintiffs deem that Mr. Passe used the term "cost" as a "code word for insurance."

Based on these statements, plaintiffs speculate that Ms. Hornick and Mr. Passe had opinions about a "lawsuit liability crisis." Such conjecture, however, does not warrant striking the jurors for cause. Rather, plaintiffs were required to demonstrate that the jurors in question exhibited actual bias. *See United States v. Khoury,* 901 F.2d 975 (11th Cir.) (party challenging refusal to strike juror for cause must show "either an express admission of bias, or proof of specific facts showing such a close connection to the circumstances of the case that bias must be presumed.") (citation omitted), *opinion modified on other grounds,* 910 F.2d 713 (11th Cir.1990).

Moreover, the court questioned Ms. Hornick and Mr. Passe about their ability to be fair and impartial jurors. Both Ms. Hornick and Mr. Passe declared they could be fair and impartial in resolving this case. Thus, even assuming the two jurors had formed opinions concerning a litigation crisis, they were properly not excused for cause because they indicated they could consider the case without prejudice and render a fair and impartial verdict based on the evidence. The court is satisfied that any opinions Ms. Hornick and Mr. Passe may have held would not affect their competence as jurors. The court concludes that plaintiffs' challenges for cause were properly rejected.

Plaintiffs also contend that Mr. Passe should have been excused for cause based on his "extensive knowledge of the technical issues to be tried and specialized expertise in them." Plaintiffs waived this objection by not raising it at trial. *The court also finds that the objection is without merit.* Mr. Passe is a project manager for Deluxe Corporation. His business does not concern farm machinery or grain augers and his formal training was in architecture. The court concludes that it would have rejected the objection even if timely made by plaintiffs.

■ Finally, the court notes that any alleged error in refusing to strike Ms. Hornick and Mr. Passe for cause was not prejudicial to plaintiffs. Plaintiffs used peremptory strikes to remove both Ms. Hornick and Mr. Passe from the jury panel. Plaintiffs' loss of a peremptory challenge does not constitute a violation of the right to an impartial jury. *See, e.g., Ross v. Oklahoma,* 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80 (1988). The concern is that the jury that sits be impartial, not how an impartial jury is achieved. Plaintiffs have offered no evidence that the jury was biased or prejudiced. Thus, the court presumes that the jurors who sat were fair and impartial and holds that any error in not excusing Ms. Hornick and Mr. Passe for cause was harmless.

### B. Other Alleged Errors Concerning Jurors

Plaintiffs raise for the first time in their motion for a new trial a challenge for cause to juror Mr. Horst. Mr. Horst once owned a Hutchinson grain auger, albeit a different model than the one at issue in this case. Mr. Horst stated that his auger came equipped with a guard. Mr. Horst removed the guard because he believed it interfered with operating the auger at capacity. When Mr. Horst later decided to sell the auger, he welded the guard back on. Based on this information, plaintiffs now contend that Mr. Horst should not have been impaneled because he was biased on the issues of the necessity and efficacy of the guard.

■ Plaintiffs did not raise any objection to Mr. Horst at trial. Thus, they have waived their right to challenge Mr. Horst. *See Johnson v. Hill* 274 F.2d 110, 116 (8th Cir.1960). Plaintiffs elected not to use their third peremptory challenge to strike Mr. Horst. Because plaintiffs did not exhaust their peremptory challenges, they cannot object to Mr. Horst sitting on the jury. The court also notes that the objection to Mr. Horst is without merit.

### 2. Causation and Failure to Warn Claim

■ Upon defendant's motion at the close of evidence, the court granted judgment as a

position of plaintiffs. The question was improp-

er and the court sustained the objection.

matter of law on plaintiffs' failure to warn claim, concluding that plaintiffs failed to prove causation. Plaintiffs contend that the motion was erroneously granted and challenge the court's decision to strike related failure to warn exhibits.

■ Even assuming Hutchinson initially had a duty to warn of known dangers associated with the use of the auger at the time it was manufactured and sold, plaintiffs did not carry their burden of proving that the absence of warnings was a direct cause of Ramstad's injury. Under Minnesota law, a manufacturer's failure to warn is not the cause of an accident or an injury when the user was actually aware of the danger. *See Balder v. Haley*, 399 N.W.2d 77, 82 (Minn. 1987) ("There is no reason to believe that a warning label would have done anything more to impress [plaintiff]"); *McCormick v. Custom Pools, Inc.*, 376 N.W.2d 471, 476 (Minn.Ct.App.1985) ("a warning would not have deterred [plaintiff] from diving since a warning would have merely informed him of risks of which he was already aware.").

Ramstad was fully aware of the danger associated with the grain auger. Ramstad stated that he knew before the accident that auger flightings were sharp, powerful and turned fast. He also admitted he knew to keep away from moving machinery parts and knew that serious injury could result if he contacted a moving part. Finally, Ramstad stated he knew that if he stepped where he did, his foot could slip between the rod bars into the intake and he could be seriously injured.

Plaintiffs contend that they were entitled to a rebuttable presumption that if Hutchinson had provided adequate warnings, Ramstad would have heeded them. In support of this position, plaintiffs cite state law cases from other jurisdictions.[2] Minnesota courts, however, have not adopted such a presumption. *See Kallio v. Ford Motor Co.*, 407 N.W.2d 92, 99–100 (Minn.1987). The court finds that, especially in light of the particular facts of this case, a Minnesota state court would not adopt the far-reaching doctrine urged by plaintiffs.

By refusing to recognize the presumption, plaintiffs argue that the court improperly ignored evidence that one function of a warning is to act as a reminder to one who already has some consciousness of the danger. The court need not decide whether a Minnesota state court would endorse this theory. There is absolutely no evidence in the record that the existence of a warning reminding Ramstad of the danger would have prevented Ramstad from acting as he did. *Accord Conti v. Ford Motor Co.*, 743 F.2d 195, 198 (3d Cir.1984). Rather, the evidence, viewed in favor of plaintiffs, overwhelmingly shows that Ramstad would have acted as he did regardless of any warning. Thus, even if the court were to adopt the rule urged by plaintiffs, it would hold that Hutchinson rebutted the presumption and that, based on the evidence, reasonable minds could only conclude that Ramstad would not have heeded a warning had one been provided.

Because Hutchinson's failure to warn was neither a direct or proximate cause of Ramstad's injuries as a matter of law, the court concludes that judgment as a matter of law was properly granted in favor of defendant on plaintiffs' failure to warn claim. The court also concludes that exhibits related to the failure to warn claim were correctly excluded. Accordingly, the court holds that a new trial is not warranted based on the court's deciding the failure to warn claim as a matter of law.

### 3. Continuing Duty to Warn

■ At the close of evidence, the court granted defendant's motion for judgment as a matter of law on plaintiffs' claim that defendant owed a continuing duty to warn of

2. Ramstad also purports to rely on *Johnson v. Niagra Machine & Tool Works*, 666 F.2d 1223, 1225 (8th Cir.1981). In that case the manufacturer provided warnings which the plaintiff claimed were inadequate. The Eighth Circuit held that the plaintiff had to show that he had read the warnings in order to maintain a claim based on their inadequacy. In the case before the court, there were no warnings given. The court's finding that Hutchinson's failure to warn did not cause Ramstad's injury assumes that if a warning had been given, it would have been adequate.

dangers associated with using the grain auger. Plaintiffs claim that the motion was erroneously granted.

■■■■■ "The question of whether a legal duty to warn exists is a question of law for the court—not one for jury resolution." *Germann v. F.L. Smithe Mach. Co.*, 395 N.W.2d 922, 924 (Minn.1986). Under Minnesota products liability law, a continuing duty to warn of dangers associated with using a product arises only in "special cases". *Hodder v. Goodyear Tire & Rubber Co.*, 426 N.W.2d 826, 833 (Minn.1988). The special circumstances in *Hodder* included: (1) the defendant's knowledge of problems with the product since the late 1950's, including the knowledge that the product might explode with little provocation; (2) the hidden nature of the danger; (3) the fact that when explosions did occur, serious injury or death usually resulted; (4) defendant remained in that line of business, continued to sell parts for use with the product and had advertised the product within five years of the plaintiff's injury; and (5) defendant had undertaken a duty to warn of product dangers.

The court concludes that the special factors which warranted a continuing duty to warn in *Hodder* do not exist in the instant case. Hutchinson had notice of only a handful of other accidents. The danger associated with the auger was not hidden and was known to users. There is no evidence that Hutchinson had undertaken a duty to warn. Hutchinson also adopted a new intake design and ceased marketing a shield for grain augers. The only factor that favors imposing a continuing duty to warn in this case is the gravity of the resulting harm. That factor alone, however, is insufficient to satisfy the special circumstances required by *Hodder*.

Because defendant owed plaintiffs no post-sale duty to warn as a matter of law, the court concludes that judgment as a matter of law was properly granted in favor of defendant on plaintiffs' claim of breach of a continuing duty to warn. Accordingly, the court holds that a new trial is not warranted based on the court's legal conclusion that defendant was not under a continuing duty to warn.

### 4. Relevant Time Period of Defendant's Knowledge

Plaintiffs contend that the court improperly limited their proof of defendant's knowledge to the date of sale of the grain auger, August 1972, rather than up to the date of injury, June 1988. Having concluded that judgment was properly granted in favor of defendant on the continuing duty to warn claim, the court holds that evidence concerning defendant's post-sale knowledge was properly excluded as irrelevant.

The court also finds that any alleged error was harmless. The court excluded a 1977 paper offered by plaintiffs on the ground that it post-dated the sale of the auger at issue. The paper discussed failure mode and effect analysis. Plaintiffs' expert, John Sevart, was permitted to testify about failure mode and effect analysis and another witness was cross-examined on the subject. The court also admitted certain post-sale evidence, including evidence of other alleged accidents. Thus, because the full import of plaintiffs' proffered evidence was before the jury in one form or another, the court concludes there was no prejudice to plaintiffs' and any error was harmless given the evidence actually received.

### 5. Excluded Exhibits

Plaintiffs claim that the court erred by excluding plaintiffs' proffered Exhibits 37, 51–54, 56, 60–62, 67, 71, 74, 88, 107, 110 and 117. Plaintiffs also contend that defendant's motion to strike plaintiffs' Exhibits 1 and 200 was erroneously granted. Plaintiffs cannot now claim error concerning proposed Exhibits 51–54, 56, 60–62, 67, 107 and 117 because they were not offered during plaintiffs' case.[3] Thus, the court need only address the remaining proposed Exhibits.

### A. Plaintiffs' Proposed Exhibits 37 and 88

■■■■ During the testimony of John Sevart, plaintiffs offered Exhibit 37, the 1946

---

**3.** Proposed exhibits 51, 67 and 107 were offered by plaintiffs after the defense rested and the jury was dismissed to deliberate. Plaintiffs do not contend that this aspect of the court's denial of their motion to reopen was erroneous.

Accident Prevention Manual, and Exhibit 88, ASA.B20.1 safety standard. The contents of these exhibits was actually admitted over the objection of defendant under the learned treatise rule. That rule provides that statements contained in material admitted as learned treatises should be read to the jury, rather than actually received as exhibits. Fed.R.Evid. 803(18). John Sevart read extensively from proposed Exhibits 37 and 88 and several provisions of the materials were magnified and displayed before the jury. The court concludes that its decision to exclude the actual materials from being introduced into evidence was proper.

### B. Plaintiffs' Proposed Exhibit 71

 During the testimony of Dwight Benninga, plaintiffs offered Exhibit 71, a 1982 article which he authored entitled "Progress in Farm Equipment Safety." Defendant challenged the relevance of the exhibit and the court sustained the objection. The article was written ten years after the auger in question was sold and, thus, was not probative of Hutchinson's knowledge during the relevant time period. The court concludes that its decision to exclude Exhibit 71 based on relevancy grounds was not erroneous.

### C. Plaintiffs' Proposed Exhibit 74

During John Sevart's testimony, plaintiffs offered Exhibit 74, a safety proposal from the Farm and Industrial Equipment Institute. Defendant objected for lack of foundation because plaintiffs failed to establish the date of the proposal. Mr. Sevart did not know when the proposal was actually prepared or adopted. Mr. Sevart merely stated that the document was part of his professional library. The court concludes that it properly excluded Exhibit 74 for lack of foundation.

### D. Plaintiffs' Proposed Exhibit 110

Finally, plaintiffs contend the court erroneously excluded a paper authored by John

Hollenback entitled "Failure Mode & Effect Analysis." Because the paper post-dated the sale of the auger, defendants challenged its relevancy. The paper was not probative of Hutchinson's knowledge during the relevant time period. Thus, the court concludes that the objection was properly sustained. The court also finds that any alleged error was harmless. Plaintiffs were not prejudiced by the exclusion of Exhibit 110 because they were allowed to introduce extensive testimony on the subject matter of the proffered paper.

### 6. Jury Instructions

 A federal district court presiding over a diversity case is not bound to give the jury instructions requested by the litigants. *Manning v. Lunda Const. Co.,* 953 F.2d 1090, 1092 (8th Cir.1992) (per curiam) (citation omitted). Rather, "[t]he trial court has broad discretion to instruct the jury in the form and language it considers a fair and adequate presentation of [state] law." *Grogan v. Garner,* 806 F.2d 829, 836 (8th Cir. 1986). For the following reasons, the court holds that a new trial is not warranted based on the instructions and verdict form given to the jury.

Several jury instructions that plaintiffs insist the court erroneously refused relate to the claims of failure to warn and continuing duty to warn. Plaintiffs' requested instruction numbers 29, 30, 31 and 33 deal with warning and post-sale duty issues.[4] Having concluded that judgment as a matter of law was properly granted as to those claims, the court concludes that the exclusion of related instructions was not erroneous.

### A. Plaintiffs' Requested Instruction Number 34

 Plaintiffs contend that the court erred by failing to give their requested jury instruction number 34 verbatim. Plaintiffs' instruction concerned knowledge and notice and was drawn from § 72.07 of 3 Devitt, Blackmar & Wolff, *Federal Jury Practice*

---

**4.** The court also notes that plaintiffs' requested instruction number 33, concerning a manufacturer's nondelegable duty to design and manufacture a reasonably safe product, was not relevant to this case. Defendant did not try to shift its responsibility for design selection to another party.

*and Instructions: Civil* (4th ed. 1987). The model instruction states that "the law will charge a person with notice and knowledge of whatever he would have learned, upon making such inquiry as it would have been reasonable to expect him to make under the circumstances." *Id.*[5] The instant case, however, concerned a manufacturer's duty to keep abreast of scientific developments; that particular issue was not adequately addressed by plaintiffs' proposed instruction. The court relied on the instruction given by Minnesota courts—4 *Minnesota Jury Instruction Guides* (JIG), Civil 117 (3d ed. 1986)—and instructed the jury that:

Hutchinson is obligated to keep informed of scientific knowledge and discoveries in the field.

Jury Instruction No. 27.

Although plaintiffs agree with the substantive rule underlying this instruction, they contend the court's language was inadequate because it did not delineate between constructive and actual knowledge. That contention lacks merit. The instruction in no way intimated that Hutchinson's duty to keep abreast of scientific developments was limited by its actual knowledge. To the contrary, the instruction charged Hutchinson with knowledge of the scientific field at the time the auger in question was manufactured, regardless of whether Hutchinson actually had such knowledge. The court concludes that the jury instruction given was not erroneous as it correctly stated Minnesota law and adequately addressed the substance of plaintiffs' requested jury instruction.

### B. Plaintiffs' Requested Instruction Number 35

 Plaintiffs also contend that the court erred by failing to give their requested jury instruction number 35. The language proposed by plaintiffs stated that:

In your deliberations you may take into account what the Defendant was doing or not doing and what the industry was doing or not doing. An industry, however, may

not set its own standards to be judged by, if that standard is less than reasonable prudence.

Again, the court rejected the exact language proposed by plaintiffs in favor of the instruction given by Minnesota courts, 4 Minnesota JIG, Civil 101.1 (3d ed. 1986). The court instructed the jury that:

Evidence has been introduced in this case concerning custom of the industry. Such evidence is not conclusive on the question of whether the parties involved exercised reasonable care. Rather, it is to be considered by you along with all the other evidence in the case in deciding whether reasonable care was exercised.

Jury Instruction No. 23. The instruction given was not erroneous as it correctly stated Minnesota law and permitted the jury to conclude that the industry custom itself may be negligent. In light of jury instruction number 23, plaintiffs' instruction number 35 was unnecessary.

### C. Plaintiffs' Requested Instruction Number 46

 Plaintiffs contend that the court erred in refusing to inform the jury on the special verdict form of the effect of its apportionment of fault. The verdict form proposed by plaintiffs did not incorporate such information. The verdict form actually submitted to the jury was virtually identical to the one proposed by plaintiffs. The court finds that the verdict form submitted to the jury was fair. The court also holds that the exclusion of information now asserted by plaintiffs as an essential part of the verdict form was not erroneous.

### D. Defendant's Requested Instructions

Finally, plaintiffs allege the court erred by rejecting their objections to defendant's requested instructions numbers 10 and 27. *See* Plaintiffs' Motion for New Trial at p. 3, ¶ 8. Defendant's requested instruction number 10 was drawn verbatim from § 71.01 of 3 Devitt, Blackmar & Wolff, *Federal Jury Practice*

---

5. The instruction was approved by the Eighth Circuit in *Trapp v. 4–10 Investment Corp.*, 424 F.2d 1261 (1970). *Trapp*, however, was a dram shop case and the instruction was given in the context of charging a liquor store with the knowledge that minors would drink alcohol. Thus, *Trapp* does not provide guidance in this case.

*and Instructions: Civil* (4th ed. 1987). The instruction given was merely a general introductory instruction concerning the province of the court and jury and was not erroneous. Likewise, defendant's requested instruction number 27 was drawn verbatim from § 73.09 of 3 Devitt, Blackmar & Wolff, *Federal Jury Practice and Instructions: Civil* (4th ed. 1987). The instruction concerned the effect of prior inconsistent statements and was not given in error.[6]

### 7. Legal Effect of Apportionment of Fault

■ Plaintiffs contend that the court erred in refusing to inform the jury by separate instruction, or at least allow comment in closing argument, of the legal effect of apportioning fault. Although plaintiffs did not submit a proposed instruction, they did make an oral request for such an instruction at the jury charge conference. This issue turns on whether the federal court should apply Rule 49 of the Federal Rules of Procedure or must follow state law in a diversity case. Rule 49.01(b) of the Minnesota Rules of Civil Procedure provides that:

> In actions [involving the comparative fault statute] the court shall inform the jury of the effect of its answers to the comparative fault question and shall permit counsel to comment thereon, unless the court is of the opinion that doubtful or unresolved questions of law or complex issues of law or fact are involved which may render such instruction or comment erroneous, misleading, or confusing to the jury.

Minn.R.Civ.P. 49.01(b).[7]

Plaintiffs contend that although Rule 49.01(b) is labeled a rule of procedure, it actually grants a substantive right under Minnesota law. Defendant claims that the court properly applied Federal Rules of Civil Procedure 49 which it contends directly conflicts with Rule 49.01(b). Even assuming the state and federal rules do not conflict, defendant maintains that the court properly applied federal law because Rule 49.01(b) is not an integral part of Minnesota's comparative fault statute.

The court concludes that the scope of the federal rule is sufficiently broad to control the issue before the court. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 750 n. 9, 100 S.Ct. 1978, 1985 n. 9, 64 L.Ed.2d 659 (1980) (court should give the Federal Rules their plain meaning and need not construe them narrowly in order to avoid a "direct collision"). Rule 49(a) of the Federal Rules of Civil Procedure provides that:

> The Court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue.

Fed.R.Civ.P. 49(a). The purpose behind this rule is to divorce the jury's fact findings from the court's application of law to those findings. *See Carvalho v. Raybestos–Manhattan, Inc.*, 794 F.2d 454, 457 n. 2 (9th Cir. 1986) ("Fed.R.Civ.P. 49 is designed to prevent the jury's view of the correct result from interfering with factual findings."); *Walther v. Omaha Pub. Power Dist.*, 412 F.2d 1164, 1170 (8th Cir.1969) ("When a special verdict is used, the court need give the jury only such explanation and instructions as may be necessary to enable the triers of fact to make intelligent findings."). The court concludes that informing the jury of the legal effect of their answers contravenes the purpose behind the federal rule.

---

**6.** Hutchinson speculates that plaintiffs' meant to challenge jury instructions numbers 10 and 27 given by the court. While the court refuses to guess whether plaintiffs meant to assign error to other instructions, it notes that instructions numbers 10 and 27 correctly stated the law and were properly given.

**7.** Plaintiffs cite *Manning v. Lunda Const. Co.*, 953 F.2d 1090, 1093 (8th Cir.1992) (per curiam), to support the propriety of both an instruction and comment in closing argument. The court agrees with defendant that the *Manning* court simply did not address the issue facing the court. Rather, the court in *Manning* rejected the defendant's argument that plaintiff improperly commented on the legal effect of the jury finding both parties negligent during closing argument based on the defendant's failure to object to the comments at trial. Because defendant did make a timely objection in this case, *Manning* affords no guidance to the court.

It is well established that the rules governing practice and pleading in federal courts necessarily encompass "matters which, though falling within the uncertain area between substance and procedure are rationally capable of classification as either." *Hanna v. Plumer*, 380 U.S. 460, 472, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965). *Accord Walker v. Armco Steel Corp.*, 446 U.S. 740, 749–50, 100 S.Ct. 1978, 1984–85, 64 L.Ed.2d 659 (1980). Generally in trials in federal court the procedure upon special verdicts is governed by the Federal Rules of Procedure and not by state statute. The Eighth Circuit has recognized that "a jury in making special findings is best directed not to concern themselves about whether their answers will be favorable to one party or the other or what the final result of the law suit may be." *Chicago, Rock Island and Pacific R.R. v. Speth*, 404 F.2d 291, 295 (8th Cir.1968). *See Walther v. Omaha Pub. Power Dist.*, 412 F.2d 1164, 1170 (8th Cir.1969) (notifying the jury of the "legal effect of concurrent negligence ... is unnecessary to the jury's function of specific fact-finding.").

The court concludes that there is a conflict between Rule 49.01(b), which requires the court to instruct the jury on the effect of its verdict, and Fed.R.Civ.P. 49, which requires the court to give instructions that are necessary to enable the jury to make its findings. The instruction urged by plaintiffs would permit, if not encourage, fact finding designed to obtain a desired result or based on sympathy rather than an objective consideration of the evidence. Fed.R.Civ.P. 49, however, aspires to prevent goal-oriented fact finding. *Carvalho*, 794 F.2d at 457 n. 2; *Speth*, 404 F.2d at 295; *Walther*, 412 F.2d at 1170. Having concluded that there is a "direct collision" between the federal rule and state law, the court holds that the federal rule was properly applied in this case.[8]

The court notes that it would have applied the Federal Rule in the absence of a direct conflict between the federal rules and state law. Plaintiffs insist that Rule 49.01(b) grants a substantive right under Minnesota law. The court disagrees. Rule 49.01(b) is a special rule within Minnesota's special verdict rule for comparative negligence cases. Rule 49.01(b) is not an integral part of the rights and obligations created by the comparative fault statute. Nor is Rule 49.01(b) "bound up" with Minnesota's comparative fault law "in such a way that its application in the federal court is required." *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 535, 78 S.Ct. 893, 899, 2 L.Ed.2d 953 (1958). Because the comparative fault statute operates independently of the Rule 49.01(b), the court concludes that the Federal Rule was properly applied in this case.

While not exactly on point, the court finds some confirmation of its characterization of Rule 49.01(b) in the decision of the Supreme Court of Minnesota in *Halla Nursery, Inc. v. Baumann–Furrie & Co.*, 454 N.W.2d 905 (Minn.1990).[9] In that case, counsel failed to object to the trial court's failure to instruct the jury on the effect of its apportionment of liability. The Supreme Court held that failure to instruct the jury on the effect of apportionment could not be deemed to be a "fundamental error." *Id.* 454 N.W.2d at 911 (defining fundamental error as one that would "destroy the substantial correctness of the charge as a whole, cause a miscarriage of justice or result in substantial prejudice on an issue vital in the litigation.") (quoting *Clifford v. Peterson*, 276 Minn. 142, 145, 149 N.W.2d 75, 77 (1967)). While an analogy to *Halla* is weakened by the lack of objection at trial, the court nonetheless finds that the decision in that case tends to indicate that Rule 49.01(b) is a rule of procedure, not substance.

---

8. The court is aware that another court in the District of Minnesota opted to inform the jury of the legal effect of apportioning liability between the parties. *See Bevins v. Fargo Truss Systems, Inc.*, Civ. No. 3–91–118 (D.Minn. April 1, 1993). There is no indication, however, that either party objected in that case or that the court addressed whether Minn.R.Civ.P. 49.01(b) and Fed.R.Civ.P. 49 conflicted.

9. The court admonishes counsel for plaintiffs for coming dangerously close to violating their ethical obligations by citing to and relying on the judgment of the appellate court in *Halla* which was reversed by the Supreme Court of Minnesota in 1990.

**1522**

### 8. Per Diem Argument

■ Plaintiffs contend the court erred in granting defendant's motion in limine to exclude per diem arguments. Per diem arguments advise the jury to quantify pain and suffering by affixing an amount of damages to each hour or day and multiplying that amount by the number of hours or days left in a plaintiff's life. The Eighth Circuit has condemned jury instructions requiring per diem mathematical calculations and has left the question of whether to allow per diem closing arguments to the discretion of the trial court. *Manning v. Lunda Const. Co.*, 953 F.2d 1090, 1093 (8th Cir.1992) (per curiam) (citation omitted).

The court concludes that no error was committed. The court finds that plaintiffs' advising the jury that pain and suffering can be quantified with certainty when such precision is not possible would have misled and confused the jury and prejudiced defendant. The per diem arguments advanced by plaintiffs would have improperly encouraged the jury to make an award based on an illegitimate and speculative basis rather than on an objective evaluation of the evidence. The court concludes that the decision to exclude per diem arguments was a proper exercise of its discretion and that a new trial is not warranted on this ground.

### 9. Denial of Certain Motions Brought by Plaintiffs

■ Plaintiffs contend the court erred by refusing to reopen the evidence after both parties had rested to receive all of the technical papers written by plaintiffs' witnesses John Sevart and Dwight Benninga. A motion to reopen the evidence is addressed to the trial court's discretion. Plaintiffs claim that the papers were necessary to enable the jury to assess the qualifications and credibility of the witnesses. Both witnesses were cross-examined about their qualifications and academic credentials. Moreover, each witness testified for several hours, allowing the jury ample opportunity to evaluate their credibility. The court also notes that for the most part Mr. Benninga's papers were not relevant to this case. Accordingly, the court concludes that it properly denied plaintiffs' motion to reopen the evidence.

Plaintiffs also contend that the court erred by denying their motion to recommit the jurors for further deliberations after informing them of the effect of apportioning liability between the parties. The court has already concluded that the jury was properly instructed. Moreover, it would have been improper to recommit the jurors for further deliberations because they reached a conclusive verdict. Accordingly, the court concludes that it properly denied plaintiffs' motion to recommit the jury after it had reached a verdict.

Finally, plaintiffs contend the court erroneously denied their motion for a mistrial. Having concluded that no error was committed that either misled the jury or prejudiced the substantial rights of plaintiffs, the court holds that plaintiffs' motion for a mistrial was properly denied.

### CONCLUSION

Based on a review of the file, record and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that plaintiffs' motion for a new trial is denied.