# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2656

_____

Mary Jane Badrawi

*Plaintiff - Appellant*

v.

Wells Fargo Home Mortgage, Inc.,
now known as Wells Fargo Bank, N.A.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 16, 2013
Filed: June 28, 2013

_____

Before WOLLMAN, MURPHY, and SMITH, Circuit Judges.

_____

MURPHY, Circuit Judge.

After Mary Jane Badrawi defaulted on mortgage payments, Wells Fargo Home Mortgage, Inc. foreclosed on her home and purchased the property in a foreclosure sale. Badrawi then filed an action in state court arguing that the foreclosure was invalid because Wells Fargo had violated Minn. Stat. § 580.032, subd. 3 by failing to record a notice of pendency of foreclosure before publishing the foreclosure notice.

Wells Fargo removed the action to the federal district court[1] which then granted its motion to dismiss. Badrawi appeals, and we affirm.

I.

In 2003 Badrawi obtained a loan from MidAmerica Mortgage Corporation secured by a mortgage on her home in Rogers, Minnesota. MidAmerica subsequently assigned the mortgage to Wells Fargo. According to Badrawi's complaint, she thereafter "fell behind on . . . loan payments," "made an unsuccessful attempt to modify [the] mortgage," and defaulted on the loan.

Wells Fargo elected to foreclose on Badrawi's home "by advertisement," which allowed it to commence proceedings by publishing a foreclosure notice in a local newspaper rather than by filing a judicial action. See Jackson v. Mortg. Elec. Registration Sys., Inc., 770 N.W.2d 487, 494 (Minn. 2009). On April 19, 2011 Wells Fargo recorded a pendency of foreclosure notice in the Hennepin County real estate records. The same day it also began publishing the notice in a local legal newspaper, where it appeared for the next six weeks. On April 21, its representative visited Badrawi's home and served the notice on her daughter. Wells Fargo then purchased the property at a foreclosure sale on June 13.

On December 2, 2011 Badrawi filed this action in state court seeking to invalidate the foreclosure proceeding. She claimed that Wells Fargo had failed to comply with Minnesota's requirements for foreclosure by advertisement, and alleged six counts including fraud, lack of standing to foreclose, improper service, failure to disclose the loan assignment, and defective and untimely publication of the foreclosure notice. Only count six, alleging untimely publication of the foreclosure

---

[1]The Honorable Donovan W. Frank, United State District Judge for the District of Minnesota.

notice, is at issue on appeal. That count states that by both publishing and recording notice of foreclosure on the same day, Wells Fargo had violated the requirement of Minn. Stat. § 580.032, subd. 3 that a foreclosing entity "record a notice of the pendency of the foreclosure . . . before the first date of publication of the foreclosure notice" (emphasis added).

Wells Fargo removed the case to federal district court. It then moved to dismiss and Badrawi moved to remand. The district court declined to remand and granted Wells Fargo's dismissal motion after it concluded that Badrawi had failed to state a claim on any count. With respect to count six, the district court concluded that Badrawi could not challenge the foreclosure based on Wells Fargo's noncompliance with Minn. Stat. § 580.032, subd. 3. The court first observed that another statute, Minn. Stat. § 580.02, provided the core "[r]equisites to foreclose" by advertisement. It pointed out that Minn. Stat. § 580.02 required (1) an act of default by Badrawi, (2) lack of any other proceeding to recover the debt, (3) a prior recording of the mortgage and any assignments, and (4) the provision to Badrawi of information related to foreclosure prevention services before the foreclosure notice was recorded. Since Wells Fargo had complied with each of the requirements in Minn. Stat. § 580.02, the district court concluded that its obligations to Badrawi had been satisfied.

The district court next addressed Minn. Stat. § 580.032, subd. 3, determining that it imposed no additional burden on Wells Fargo with respect to Badrawi. It looked to Holmes v. Crummett, 13 N.W. 924 (Minn. 1882), in which the Minnesota Supreme Court had concluded that a homeowner may not set aside a foreclosure based on "an omission of some prescribed act which cannot have affected him, and cannot have been prescribed for his benefit." Id. at 924. A homeowner is instead entitled to challenge only the "steps in the proceeding which are calculated to protect [her] interests." Id. The district court observed that Minn. Stat. § 580.032 protects only those with "a redeemable interest in real property" who "request . . . notice of a mortgage foreclosure by advertisement," Minn. Stat. § 580.032, subd. 1, and that

Badrawi had not requested such notice because "as the mortgagor and occupant of the relevant property" she had received direct notice. Since Minn. Stat. § 580.032, subd. 3 could not have been "prescribed for [Badrawi's] benefit," Holmes, 13 N.W. at 924, her claim to relief under that statute failed.

The district court also recognized in a footnote that its conclusion conflicted with Ruiz v. 1st Fidelity Loan Servicing, LLC, A11-1081, 2012 WL 762313 (Minn. Ct. App. Mar. 12, 2012) (unpublished), in which a panel of the Minnesota Court of Appeals had granted a homeowner relief on a similar claim based on the same statute. Id. at *5. Since the district court considered Ruiz neither controlling nor persuasive, it elected not to follow its reasoning. Badrawi appeals only the district court's dismissal of count six.[2]

## II.

We review a district court's grant of a motion to dismiss de novo, taking the facts alleged in the complaint as true. Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), which requires a plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). When applying Minnesota law under our diversity jurisdiction, we are bound by the decisions of the Minnesota Supreme Court. Doe v. Baxter Healthcare Corp., 380 F.3d 399, 407 (8th

---

[2]Wells Fargo argues that Badrawi waived her argument on count six by failing to raise it below, citing Jasperson v. Purolator Courier Corp., 765 F.2d 736, 740 (8th Cir. 1985), but Badrawi has sufficiently preserved the point by offering as a factual and legal basis for count six that "[n]otice of pendency was filed on 04/19/2011 and first publication was on 04/19/2011; a violation of Minn. Stat. § 580.032, subd. 3." See PCTV Gold, Inc. v. SpeedNet, LLC, 508 F.3d 1137, 1145 n.5 (8th Cir. 2007).

Cir. 2004). If the state supreme court has not ruled on a particular issue, we "must determine what rule [it] would apply" by looking to other "[s]tatements made by the . . . court" and "rulings by inferior state appellate courts." Id.

Badrawi contends first that Minnesota law requires "exact compliance" with mortgage foreclosure laws, citing Jackson, 770 N.W.2d at 494 (citation omitted). She argues that Wells Fargo failed to comply with Minn. Stat. § 580.032, subd. 3 by publishing the foreclosure notice on the same day it recorded the notice, thereby rendering "the proceedings . . . void." Clifford v. Tomlinson, 64 N.W. 381, 381 (Minn. 1895).

Badrawi also challenges the district court's conclusion that she was not entitled to enforce Minn. Stat. § 580.032, subd. 3. She cites Minn. Stat. § 559.01, which states that "[a]ny person in possession of real property . . . may bring an action against another . . . for the purpose of determining such adverse claim and the rights of the parties." Badrawi contends that Minn. Stat. § 580.032, subd. 3 was implemented to protect homeowners and her rights will be prejudiced if she is unable to enforce it. Badrawi finally relies on Ruiz, 2012 WL 762313, at *5. In that case a homeowner had brought a similar challenge for untimely publication under Minn. Stat. § 580.032, subd. 3, and a panel of the Minnesota Court of Appeals granted her relief after concluding that the foreclosure was "void for failure to strictly comply with" the statute's timing requirement. Id.

Although we agree that the Minnesota Supreme Court has strictly construed state foreclosure statutes, Minn. Stat. § 580.032, subd. 3 does not provide Badrawi relief in this case. The Minnesota Supreme Court concluded in Holmes that a homeowner may not challenge a foreclosure action based on "an omission of some prescribed act which cannot have affected him, and cannot have been prescribed for his benefit." 13 N.W. at 924. Neither the Minnesota Supreme Court nor the state's

lower courts have ever overruled or narrowed the ruling in <u>Holmes,</u> and it is therefore binding on our court in interpreting Minnesota law. <u>See</u> <u>Doe</u>, 380 F.3d at 407.

Badrawi is not among the class whose interests Minn. Stat. § 580.032, subd. 3 was enacted to protect. Minn. Stat. § 580.032 protects those with "a redeemable interest in real property" by allowing them to "record a request for notice foreclosure . . . with the county recorder." Minn. Stat. § 580.032, subd. 1. This provision is most sensibly read to protect the interest of third parties who own a "redeemable interest" in mortgaged property which might be jeopardized if the mortgagor foreclosed without notice. A secondary mortgagor's interest would be at risk, for example, if the primary mortgagor foreclosed on the property and the sale proceeds were insufficient to pay both claims. In that case a secondary mortgagor would require notice before the commencement of foreclosure proceedings in order to protect its interest.

Homeowners do not require the same particular type of notice protection since a separate Minnesota statute requires personal service of foreclosure notice to "the person in possession of the mortgaged premises." <u>See</u> Minn. Stat. § 580.03. There is no dispute at this stage that Wells Fargo properly served Badrawi with notice in compliance with Minn. Stat. § 580.03. Since Badrawi received personal service of the foreclosure notice, she could not have been among those for whose benefit the separate notice requirement of Minn. Stat. § 580.032, subd. 3 was enacted. She is accordingly unable to seek relief by challenging Wells Fargo's alleged noncompliance with the statute. <u>See</u> <u>Holmes</u>, 13 N.W. at 924.

Our conclusion is also consistent with "rulings by inferior state appellate courts." <u>Doe</u>, 380 F.3d at 407. In <u>Farm Credit Bank of St. Paul v. Kohnen</u>, 494 N.W.2d 44 (Minn. Ct. App. 1992), a panel of the Minnesota Court of Appeals noted that "[i]f the rights of the parties to be foreclosed upon were not prejudiced by the lack of notice . . . [Minnesota] courts have uniformly held that service was valid." <u>Id.</u> at 48. Badrawi's rights could not have been prejudiced by Wells Fargo's alleged

failure to comply with the notice requirement of Minn. Stat. § 580.032 because she had received personal notice under Minn. Stat. § 580.03. In such circumstances Wells Fargo's service was thus valid under the law. Id.

The intermediate court's decision in Ruiz does not alter our conclusion. A "decision of an intermediate state appellate court is not binding on a federal court that seeks to determine state law." Pleasants v. Am. Exp. Co., 541 F.3d 853, 858 (8th Cir. 2008). We will only "follow the decisions of the state's intermediate courts when they are the best evidence of what the state's law is." Swope v. Siegel-Robert, Inc., 243 F.3d 486, 496 (8th Cir. 2001). We are unpersuaded that Ruiz is "the best evidence" of Minnesota law on the particular issue before our court. Id.

The parties in Ruiz did not raise, and the Minnesota Court of Appeals did not address, the legal argument Wells Fargo presents here. Wells Fargo's precise argument is that Minn. Stat. § 580.032 does not provide relief to homeowners because it was not enacted for their benefit, an issue not addressed in Ruiz. Moreover, the Minnesota Supreme Court has "stress[ed] that unpublished decisions of the court of appeals are not precedential," and Ruiz was not designated for publication. Vlahos v. R&I Const. of Bloomington, Inc., 676 N.W.2d 672, 676 n.3 (Minn. 2004).

While the Minnesota Supreme Court did grant review in Ruiz, it was a limited review and the court specifically declined to consider the parties' arguments "regarding compliance with the notice of pendency requirement in Minn. Stat. § 580.032, subd. 3." Ruiz v. 1st Fid. Loan Servicing, LLC, 829 N.W.2d 53, 59 (Minn. 2013). The state supreme court instead affirmed on the basis that the foreclosing party had not complied with all four "[r]equisites for foreclosure" by advertisement contained in Minn. Stat. § 580.02. It emphasized that a foreclosing party "must strictly comply with" that statute, id. at 54, but did not discuss the effect of noncompliance with any other state foreclosure statute. There is no dispute that Wells Fargo complied with the four requirements of Minn. Stat. § 580.02 in the case

now before our court, and <u>Ruiz</u> is therefore not instructive of the Minnesota Supreme Court's view on the issue before us.

III.

Since Badrawi's claim was properly dismissed under the facts of this case and the Minnesota law, we affirm the judgment of the district court.

SMITH, Circuit Judge, dissenting.

I respectfully dissent from the majority's affirmance of the district court's grant of Wells Fargo's motion to dismiss.

The majority resolves this case as though we sat in the place of the Minnesota Supreme Court. We do not. Our task in this diversity action is clear. "We must predict how the Supreme Court of Minnesota would rule, and we follow decisions of the *intermediate state court* when they are the *best evidence* of Minnesota law." *Friedberg v. Chubb & Son, Inc.*, 691 F.3d 948, 951 (8th Cir. 2012) (emphases added); While an on-point Minnesota Supreme Court decision would be controlling precedent, we are not bound by that State's inferior court decisions. Nonetheless, the decisions of those courts can indeed be helpful in making the best prediction of what the Minnesota Supreme Court would do. *See Grinnell Mut. Reinsurance Co. v. Schwieger*, 685 F.3d 697, 703 n.5 (8th Cir. 2012) ("'Although federal courts are not bound to follow the decisions of intermediate state courts when interpreting state law, state appellate court decisions are highly persuasive and should be followed when they are the best evidence of state law.'" (quoting *Baxter Int'l, Inc. v. Morris*, 976, F.2d 1189, 1196 (8th Cir. 1992))). "Further, while unpublished decisions 'are not precedential,' Minn. Stat. § 480A.08, subd. 3(c), they 'can be of persuasive value.'" *Id*.

-8-

In *Ruiz*, the Minnesota Supreme Court voided a foreclosure because the mortgagee did not strictly comply with Minn. Stat. § 580.02(3). "[B]ecause [the Minnesota Supreme Court] conclude[d] [in *Ruiz*] that the foreclosure [was] void for failure to strictly comply with Minn. Stat. § 580.02(3) . . . , [it] decline[d] to address the parties' other arguments, including those regarding compliance with the notice of pendency requirement in Minn. Stat. § 580.032, subd. 3 . . . ." *Ruiz*, 829 N.W.2d at 59. Therefore, the Minnesota Court of Appeals's decision in *Ruiz,* which did address § 580.032, remains "the best evidence of Minnesota law" for the case before us. *See Friedberg*, 591 F.3d at 951. In its review of the *Ruiz* case, the Minnesota Court of Appeals concluded that "the [Minnesota] [S]upreme [C]ourt clearly requires strict compliance with the foreclosure-by-advertisement statutes." *Ruiz*, 2012 WL 762313, at *4. Therefore, the court "reviewe[d] [the bank's] foreclosure by advertisement for strict compliance with the relevant statutory requirements." *Id*. Applying the strict-compliance standard to the case, the court concluded that the bank "failed to satisfy [Minn. Stat. § 580.032, subd. 3], because it recorded the notice of pendency on the first date of publication," not "'before the first date of publication of the foreclosure notice.'" *Id*. (quoting Minn. Stat. § 580.032, subd. 3). "Because [the bank] failed to strictly comply with section 580.032, subd. 3," the court held that "'the foreclosure proceeding [was] void.'" *Id*. (quoting *Jackson*, 770 N.W.2d at 494). Because the bank's "foreclosure by advertisement [was] void for failure to strictly comply with . . . [§ ] 580.032," the court "reverse[d] the district court's summary-judgment dismissal of [the plaintiff's] claims under these sections" and "remand[ed] for entry of judgment for [the plaintiff] on these claims, as well as on her quiet-title claim." *Id.* at *5; *see also Sari v. Wells Fargo Bank, N.A.*, 2012 WL 4820148, at *2 (D. Minn. Oct. 10, 2012) (slip copy) (explaining that although "[t]he Minnesota Supreme Court has not ruled directly on the question of compliance with Minn. Stat. Section 580.032, subd. 3," "the language of the statute is clear" and "the state courts would require strict compliance with this state law"). I believe that the Minnesota Court of Appeals decision in *Ruiz* is our best indicator of what the Minnesota Supreme Court would do if it had chosen to address § 580.032.

Here, Wells Fargo failed to strictly comply with § 580.032, subd. 3. Therefore, consistent with the Minnesota Court of Appeals's decision in *Ruiz*, I would reverse and remand to the district court for further proceedings.

_____