# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2596

_____

Associated Electric & Gas Insurance Services; Zurich American Insurance
Company; Energy Insurance Mutual Limited, all as subrogees of their insured
Northeast Utilities Service Company

*Plaintiffs - Appellants*

Northeast Utilities Service Company, as agent of Public Service Company of New Hampshire

*Plaintiff*

v.

BendTec, Inc.

*Defendant - Appellee*

_____

No. 15-2598

_____

Associated Electric & Gas Insurance Services; Zurich American Insurance
Company; Energy Insurance Mutual Limited, all as subrogees of their insured
Northeast Utilities Service Company

*Plaintiffs*

Northeast Utilities Service Company, as agent of Public Service Company of New Hampshire

*Plaintiff - Appellant*

v.

BendTec, Inc.

*Defendant - Appellee*

_____

Appeals from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: March 16, 2016
Filed: May 13 2016

_____

Before MURPHY, BEAM, and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge.

The Public Service Company of New Hampshire hired Siemens to replace a turbine in one of its power plants. BendTec, Inc. manufactured steam pipes for the new turbine as a subcontractor for Siemens. After the turbine was turned on, it became damaged by fine grit. The utility and its insurers sued BendTec for negligence, alleging that its pipes were the source of the grit and had been improperly cleaned. The district court[1] granted summary judgment to BendTec, concluding that the negligence claim was barred under the two year limitations period in Minn. Stat. § 541.051 since the installation of the turbine was an improvement to real property. The utility and insurance companies appeal, and we now affirm.

_____

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

-2-

## I.

Public Service Company of New Hampshire (PSCNH) operates a coal power plant in Bow, New Hampshire. The "Merrimack Station" power plant has two generating units each consisting of a coal fired boiler and a turbine generator. Unit 2 was built in 1968, and PSCNH decided to upgrade it in 2006 by purchasing a new 340 megawatt turbine from Siemens Power Generation. Siemens was to be the supplier of the new generator rotor and turbine, and it also agreed to procure the manufacture, supply, and installation of all necessary components. Siemens warranted that all equipment, materials, and supplies furnished by or through it would be free from defects. The new turbine was installed by Siemens in the spring of 2008.

"Turbine piping" carries high pressure steam from the boiler to the turbine. Siemens had selected BendTec as the subcontractor to fabricate to its specifications the turbine piping for the new PSCNH turbine. The piping consists of twenty one sections of large pipe which are transported by flatbed truck and moved using cranes. BendTec cleaned the interior of the piping using abrasive grit blasting, a process which involves spraying steel grit at the piping under high pressure. It then conducted a visual inspection of the pipes, capped them, and shipped them to the Merrimack Station. The piping was delivered on April 8, 2008 and installed by Siemens. After shipping the pipes, BendTec had no further involvement with the project.

On May 22, 2008 PSCNH started the turbine for the first time. Power output was lower than expected, and eventually the turbine was shut down and an inspection revealed steel grit blast material throughout the turbine. PSCNH's experts determined that the grit had been blown into the turbine by high pressure steam and opined that the foreign material was left over from BendTec's cleaning process. The turbine was cleaned and turned back on. Eventually PSCNH replaced the turbine blades and other components which had been damaged.

On May 21, 2014 PSCNH's agent Northeast Utilities Service Company, along with Associated Electric and Gas Insurance Services, Zurich American Insurance Company, and Energy Insurance Mutual Limited, the insurers and subrogees of Northeast Utilities Service Company (collectively, "plaintiffs"), sued BendTec for negligence. The district court granted summary judgment to BendTec, concluding that the plaintiffs' claim was barred under the applicable statute of limitations. The plaintiffs appeal.

II.

We review a grant of summary judgment de novo. Woods v. DaimlerChrysler Corp., 409 F.3d 984, 990 (8th Cir. 2005). Summary judgment is appropriate if there are no genuine issues of material fact when the record is viewed in the light most favorable to the nonmoving party, and the moving party is entitled to judgment as a matter of law. Id.; see Fed. R. Civ. P. 56. We apply Minnesota law in this diversity case. In doing so we are bound by the decisions of the Minnesota Supreme Court. Badrawi v. Wells Fargo Home Mortg., Inc., 718 F.3d 756, 758 (8th Cir. 2013). If that court has not ruled on a particular issue, we consider what rule it would likely apply. Id. Decisions of the Minnesota Court of Appeals are not binding on us but may be instructive. Doe v. Baxter Healthcare Corp., 380 F.3d 399, 407 (8th Cir. 2004); Aerotronics, Inc. v. Pneumo Abex Corp., 62 F.3d 1053, 1068 (8th Cir. 1995).

Minnesota has a two year statute of limitations for contract and tort claims "arising out of the defective and unsafe condition of an improvement to real property" and "brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property." Minn. Stat. § 541.051, subd. 1(a). The statute contains an exception however for "the manufacturer or supplier of any equipment or machinery installed upon real property." Id. subd. 1(e). If the exception applies,

negligence claims against a manufacturer or supplier are subject to a six year statute of limitations. See Minn. Stat. § 541.05, subd. 1(5).

The questions presented here are whether the turbine piping installed on the new turbine at the Merrimack Station was an "improvement to real property," and if so, whether BendTec fits the subdivision 1(e) exception for a manufacturer or supplier of equipment or machinery.

A.

The Minnesota Supreme Court has said that courts should use a "common-sense interpretation" of the phrase "improvement to real property" under section 541.051, defining such an improvement as

> [A] permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.

Lietz v. N. States Power Co., 718 N.W.2d 865, 869 (Minn. 2006); see also Kloster-Madsen, Inc. v. Tafi's, Inc., 226 N.W.2d 603, 607 (Minn. 1975) (same) (quoting Webster's Third New International Dictionary 1138 (1971)).

The installation of the new turbine at Merrimack Station, at a total cost of over $12 million, meets each of the three main factors used by Minnesota courts to ascertain whether something is an improvement to real property. See Siewert v. N. States Power Co., 793 N.W.2d 272, 287 (Minn. 2011). The turbine is a "permanent addition" to the power plant. See id. The installation of the turbine involved large expenditures of labor and money. See id. The turbine enhanced the capital value of the power plant because it was "designed to make the real property more useful or valuable, rather than intended to restore the property's previous usefulness or value."

See id. Plaintiffs' own complaint characterizes the project as an "upgrad[e]" designed to "increase power generation capacity," as opposed to simply a restoration of the existing turbine.

In Harder v. ACandS, we considered whether a steam turbine at a power plant was an "improvement to real property" for the purposes of Iowa's statute of limitations. 179 F.3d 609, 612 (8th Cir. 1999) (analyzing Iowa Code § 614.1(11)). The Iowa Supreme Court uses the same definition of an improvement from Webster's Dictionary as the Minnesota Supreme Court. Id.; Krull v. Thermogas Co., 522 N.W.2d 607, 611 (Iowa 1994). In Harder, we agreed with the district court's conclusion that power plant turbines are improvements to real property. 179 F.3d at 612. The district court concluded that turbines are improvements because they "are large component parts of the power plant weighing as much as 100 tons that have been permanently installed with concrete foundations." Harder v. ACandS, Inc., 11 F. Supp. 2d 1055, 1061 (N.D. Iowa 1998), rev'd on other grounds, Harder, 179 F.3d at 612. Further, the turbines are "integrated into the power plant structure, and are connected to other integral components by miles of complex piping and wiring." Id. The same considerations apply to the new turbine installed at the Merrimack Station, and we see no reason to doubt that the Minnesota Supreme Court would reach the same conclusion as we predicted the Iowa Supreme Court would. Indeed, Minnesota courts have found smaller structures or pieces of equipment to fall within the definition of an improvement to real property. See, e.g., State Farm Fire & Cas. v. Aquila Inc., 718 N.W.2d 879, 884 (Minn. 2006) (natural gas pipeline system); Sartori v. Harnischfeger Corp., 432 N.W.2d 448, 451–52 (Minn. 1988) (crane fabricated on a mining facility).

We further conclude that the BendTec piping was an improvement to real property. We concluded in Harder that asbestos blankets attached to a steam turbine were improvements because they were permanent additions to the turbine and enhanced the property's capital value. See 179 F.3d at 612–13. Here, the pipes at

issue are large integral components of the turbine and therefore permanent additions to it. Purchasing and installing the pipes involved significant expenditures of labor and capital, and enhanced the property's value. Because the turbine and the piping are improvements to real property and BendTec furnished the piping, this lawsuit falls within the scope of Minn. Stat. § 541.051, subd. 1(a).

B.

The plaintiffs contend that the subdivision 1(e) exception applies to BendTec because it was a "manufacturer or supplier of any equipment or machinery." Minn. Stat. § 541.051, subd. 1(e). The plaintiffs have the burden of showing that this exception applies. Integrity Floorcovering, Inc. v. Broan–NuTone, LLC, 521 F.3d 914, 919 (8th Cir. 2008). Under Minnesota law, "any exception to the statutes of limitation should be used only in exceptional circumstances." Id. (emphasis in original) (quoting Aquila, 718 N.W.2d at 886).

The Minnesota Supreme Court has not yet clarified the test for determining whether a defendant is a manufacturer or supplier of "equipment or machinery" and thus subject to the subdivision 1(e) exception. Minnesota Court of Appeals cases to date have also "provided little guidance or clarity" as to the meaning of that term. Integrity Floorcovering, 521 F.3d at 919. That court has however made a distinction between "ordinary building materials, which are incorporated into construction work outside the control of their manufacturers or suppliers, at the direction of architects, designers, and contractors," and machinery and equipment which is "subject to close quality control at the factory and may be made subject to independent manufacturer's warranties, voidable if the equipment is not installed and used in strict compliance with the manufacturer's instructions." Id. (quoting Cape Henry Towers, Inc. v. Nat'l Gypsum Co., 331 S.E.2d 476, 480 (Va. 1985), adopted by Red Wing Motel Investors v. Red Wing Fire Dep't, 552 N.W.2d 295, 297 & n.2 (Minn. App. 1996)).

-7-

In Integrity Floorcovering, we noted that classifying a bathroom ventilation fan as either "ordinary building material" or "equipment or machinery" posed a difficult question because the fan shared characteristics of both categories as defined by the Minnesota Court of Appeals. 521 F.3d at 919–20. The available limited precedent categorizes items as "ordinary building materials" if they are "integrally incorporated as part of a building structure." Id. at 920 (collecting cases). Within the category of "equipment or machinery" covered by the exception are items which "are typically large scale items, which are not integral to or incorporated into the building, and could exist separately from the building structure." Id. (collecting cases).

We believe that the Minnesota courts would not consider BendTec's turbine piping to be equipment or machinery covered by the exception. On the one hand, the piping was subject to quality control at BendTec's factory and was covered by a warranty. The pipes are also large scale items, and they are not "ordinary" in the same sense as building materials available at retail like the bathroom fan we considered in Integrity Floorcovering. See 521 F.3d at 920. On the other hand, the pipes have several of the characteristics of ordinary building materials. The turbine piping was incorporated into the turbine by Siemens outside of BendTec's control. Siemens designed the piping and installed it according to its own specifications, not to any instructions from BendTec. Further, the turbine piping was integrally incorporated into the turbine which is itself an improvement to the real property at Merrimack Station. On balance, the category of "ordinary building materials" is a better fit for the turbine piping.

We also note that the statute of limitations explicitly covers "any person . . . furnishing . . . materials" for improvements to real property. Minn. Stat. § 541.051, subd. 1(a); see Integrity Floorcovering, 521 F.3d at 920 n.6 (noting that the scope of this provision is broad). Because the new Siemens turbine is an improvement to real property, Harder, 179 F.3d at 612, and BendTec was a supplier of materials for the turbine under its subcontract, the subdivision 1(a) provision of the statute

unambiguously covers BendTec. Applying the subdivision 1(e) exception is more difficult because the turbine piping has characteristics of both ordinary building materials and equipment or machinery. Cf. Integrity Floorcovering, 521 F.3d at 919–20. The question in this case is not whether the entire turbine qualifies as machinery or equipment, and thus whether its manufacturer (Siemens) is covered by the subdivision 1(e) exception. Rather, the question here is whether the "materials" BendTec furnished for the turbine are themselves "equipment or machinery." Minn. Stat. § 541.051, subd. 1(a), 1(e). Under the "common-sense" approach used when analyzing this statute, see Lietz, 718 N.W.2d at 869, Minnesota courts would likely conclude that the stationary turbine piping, neither electrical nor electronic in nature with no function outside of being incorporated into the turbine, is not equipment or machinery. See Red Wing, 552 N.W.2d at 297 (concluding that pipes in a motel sprinkler system were ordinary building materials, not machinery or equipment). We therefore conclude that the plaintiffs have not met their burden to show that BendTec falls into the subdivision 1(e) exception. Integrity Floorcovering, 521 F.3d at 921.

Because the two year statute of limitations in Minn. Stat. § 541.051 applies and the subdivision 1(e) exception does not, and plaintiffs did not file this lawsuit within the limitations period, the district court correctly granted summary judgment to BendTec.

III.

For these reasons the judgment of the district court is affirmed.

_____