GREAT NORTHERN INSURANCE
COMPANY, as subrogee of Scott
and Leah Rued, Appellant,

v.

HONEYWELL INTERNATIONAL,
INC., et al., Defendants,

McMillan Electric Company,
Respondent,

and

Honeywell International, Inc.,
Cross Claim Plaintiff,

v.

McMillan Electric Company,
Cross Claim Defendant.

A16-0997

Court of Appeals of Minnesota.

Filed April 10, 2017

Review Granted June 28, 2017

Thomas P. Kane, Cozen O'Connor, Minneapolis, Minnesota; and Anthony J. Morrone (pro hac vice), Cozen O'Connor, Chicago, Illinois (for appellant)

Cortney G. Sylvester, Nilan Johnson Lewis PA, Minneapolis, Minnesota; and Webster A. Hart, Herrick & Hart, S.C., Eau Claire, Wisconsin (for respondent)

Considered and decided by Schellhas, Presiding Judge; Kirk, Judge; and Bratvold, Judge.

## OPINION

Kirk, Judge

Appellant-insurer challenges the summary-judgment dismissal of its product-liability, breach-of-warranty, and post-sale duty-to-warn claims against respondent-manufacturer, arguing that the district court erred by concluding that its claims were barred by the ten-year statute of repose because the heat-recovery ventilator (HRV) is not "equipment or machin-ery" installed upon real property under Minn. Stat. § 541.051, subd. 1(e) (2016), the exception to the statute of repose. Because the HRV satisfies the plain and ordinary meaning of "equipment or machinery" under subdivision 1(e), and McMillan had a post-sale duty to warn, we reverse and remand.

## FACTS

In 1996, Scott and Leah Rued constructed a new home in Eden Prairie. The Rueds' architect included two HRVs in the design of the home's ventilation system. Two Honeywell HR200 Model 2355 HRVs were installed in the Rueds' home. While the HRVs were not mandated by state code, they provided additional energy efficiency by recovering heat and removing humidity through the air-exchange process.

The HRV is an air exchanger containing two fans and two air filters, a heat-exchange core, a motor, and two ventilation openings. Two metal mechanical ducts connect the HRV with fresh air from outside the home, as one duct removes stale air from the home and the other duct draws in fresh air from outside the home. The metal ducts are attached to the HRV with screws. Each HRV is powered by an alternating current delivered via a standard three-prong electrical plug that is connected to a standard electrical outlet. The electrical outlet for the HRV receives power on its own electrical breaker. The HRV is controlled through a humidity-control dial on a thermostat that is located in the bathroom. The humidity-control dial is hard-wired through the walls to the HRV through low-voltage wiring. Drains attach to the HRV, removing any condensation that builds up inside the air exchanger.

After completion of the first stage of construction, the HRVs were hung from the overhead ceiling joists in the basement

by metal straps and brackets and connected to the duct branches running throughout the Rueds' home. An HVAC technician installed the HRVs. A city inspector checked the installation of the HRVs prior to issuing a certificate of occupancy to the Rueds.

Defendant Nutech R. Holdings Inc. designed and manufactured the HRVs that were installed in the Rueds' home. Nutech manufactured the HRVs for defendant Honeywell International Inc., and the HRVs were labeled with the Honeywell name. In 1992, Nutech began using electric motors that were manufactured by respondent McMillan Electric Company. Nutech installed McMillan's model 2355 electric motor only in the Honeywell HRVs. McMillan sold the model 2355 motor exclusively to Nutech, and the motor was only installed in HRVs. In 1998, McMillan stopped producing the model 2355 motor. Between 2006 and 2010, approximately 60,000 Honeywell HRVs with McMillan motors were sold to customers in Canada and the United States. When the lawsuit was filed in 2014, the model 2355 motor had been linked to 11 fires, but no deaths.

In 2010, one of the two HRVs installed in the Rueds' home was replaced with an air exchanger made by a different manufacturer. On May 9, 2012, an HVAC technician from defendant Treated Air Company serviced the Rueds' air conditioner and furnace. Ten days later, a fire occurred in the remaining Honeywell HRV, causing substantial property damage to the Rueds' home. The parties contest the cause of the Rueds' fire, but one theory is that the wires within the motor were vulnerable to electrical failure because they were not designed to withstand the thermal limit of the motor. The Rueds had a homeowner's policy with appellant Great Northern Insurance Company, and Great Northern paid the Rueds' insurance claim.

Great Northern, as subrogee, alleged 13 counts of tort liability. Great Northern alleged claims of post-sale duty to warn, product liability, and breach of warranty against Honeywell, Nutech, and McMillan and breach of contract and negligence against defendant Heating and Cooling, Two, and Treated Air. Honeywell and Nutech crossclaimed against McMillan, Treated Air, and Heating and Cooling, Two, alleging negligence, contribution, and indemnity. Honeywell, Nutech, and McMillan moved for summary judgment.

The district court granted McMillan's motion for summary judgment, dismissing all claims against McMillan with prejudice. The district court reasoned that Great Northern's product-liability and breach-of-warranty claims were barred under the ten-year statute of repose for improvement to real property under Minn. Stat. § 541.051, subd. 1(a) (2012), because an HRV was not "equipment or machinery," which are excepted from the statute of repose under Minn. Stat. § 541.051, subd. 1(e). The district court also concluded that McMillan had no continuing post-sale duty to warn because it had no direct contact with the distribution chain, that McMillan's name was not identified with the product, and that Nutech, McMillan's direct customer, was aware of the fire-hazard posed by the HRV and was taking action. The district court granted Honeywell and Nutech's motion for summary judgment in part, dismissing all claims except the post-sale duty-to-warn claim.

Great Northern appeals.

## ISSUES

1. Is an HRV "equipment or machinery installed upon real property" under Minn. Stat. § 541.051, subd. 1(e)?

2. Does McMillan have a post-sale duty to warn?

## ANALYSIS

### I. An HRV is "equipment or machinery installed upon real property" under Minn. Stat. § 541.051, subd. 1(e).

When the material facts are not in dispute, this court reviews the grant of summary judgment de novo to determine whether the district court erred in applying the law. *Weston v. McWilliams & Assocs., Inc.*, 716 N.W.2d 634, 638 (Minn. 2006). We view the evidence in the light most favorable to the non-moving party. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993).

This court reviews issues of statutory interpretation de novo. *State v. Vasko*, 889 N.W.2d 551, 556 (Minn. 2017). This court reviews de novo the meaning of a word or phrase in a statute. *Dykhoff v. Xcel Energy*, 840 N.W.2d 821, 825-26 (Minn. 2013). "The purpose of statutory interpretation is to ascertain the intention of the legislature." *Shire v. Rosemount, Inc.*, 875 N.W.2d 289, 292 (Minn. 2016). We interpret words of a statute according to their plain meaning. *Id.* The first step in interpreting a statute is to examine the text of the statute to determine whether the language is ambiguous. *Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 72 (Minn. 2012). "[I]f the language of a statute is clear and free from ambiguity, our role is to enforce the language of the statute, and not explore the spirit or purpose of the law." *Premier Bank v. Becker Dev., LLC*, 785 N.W.2d 753, 759 (Minn. 2010); *see also* Minn. Stat. § 645.16 (2016).

Minn. Stat. § 541.051, subd. 1(a), limits actions "by any person in contract, tort, or otherwise to recover damages" to property, real or personal, "more than ten years after substantial completion of the construction" that arise from a "defective and unsafe condition of an improvement to real property." The parties do not dispute the fact that the HRV constitutes an improvement to real property under Minn. Stat. § 541.051, subd. 1(a).

The issue before this court is whether the HRV should be classified as "equipment or machinery" under Minn. Stat. § 541.051, subd 1(e), a statutory exception to the ten-year repose of section 541.051, subdivision 1(a). As the Eighth Circuit Court of Appeals has noted, "the Minnesota Supreme Court has not yet clarified the test for determining whether a defendant is a manufacturer or supplier of 'equipment or machinery'" who meets the statutory exception to the statute of repose. *Assoc. Elec. & Gas Ins. Svcs. v. BendTec, Inc.*, 822 F.3d 420, 425 (8th Cir. 2016). Likewise, this court has "provided little guidance or clarity" as to the meaning of "equipment or machinery" under subdivision 1(e). *Integrity Floorcovering, Inc. v. Broan-NuTone, LLC*, 521 F.3d 914, 919 (8th Cir. 2008).

Subdivision 1(e) states that "[t]he limitations prescribed in this section do not apply to the manufacturer or supplier of any equipment or machinery installed upon real property." Great Northern bears the burden of showing that a statutory exception applies. *State Farm Fire & Cas. v. Aquila, Inc.*, 718 N.W.2d 879, 886 (Minn. 2006). Any exception to the statute of repose found in Minn. Stat. § 541.051, subd. 1(a), "should be used only in exceptional circumstances." *Id.* (quotation omitted).

Great Northern argues that the HRV satisfies the plain meaning of both "equipment" and "machinery" under subdivision 1(e) and should be exempt from the repose period. McMillan urges this court to avoid applying the plain meaning of "equipment or machinery" because the terms' broad definitions would necessarily include any improvement to real property, thus nullifying any distinction between subdivisions 1(a) and 1(e). McMillan asserts that apply-

ing a plain-language analysis to subdivision 1(e) violates the canon requiring this court to give meaning to every word and phrase in a statute. *See Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn. 1999) (holding that, whenever possible, a statute should be interpreted to give effect to all of its provisions and that "no word, phrase, or sentence should be deemed superfluous, void, or insignificant").

Minn. Stat. § 504.051 does not define "equipment or machinery." "In the absence of statutory definitions, we give words and phrases their plain and ordinary meanings." *500, LLC v. City of Minneapolis*, 837 N.W.2d 287, 290-91 (Minn. 2013). "To determine the plain meaning of a word, we often consider dictionary definitions." *Rosemount*, 875 N.W.2d at 292. "When the language of a statute is plain and unambiguous, it is assumed to manifest legislative intent and must be given effect." *Allan v. R.D. Offutt Co.*, 869 N.W.2d 31, 33 (Minn. 2015) (quotation omitted).

"Equipment" is defined as "the act of equipping or the state of being equipped." *American Heritage Dictionary* 602 (5th ed. 2011). "Equipment" is also defined as "the implements (as machinery or tools) used in an operation or activity; all the fixed assets other than land and buildings of a business enterprise." *Webster's Third New International Dictionary* 768 (2002). "Machine" is defined as "an apparatus consisting of interrelated parts with separate functions used in the performance of some kind of work." *The Random House Dictionary of the English Language* 1151 (2nd ed. 1987). Accordingly, "machinery" is defined as an "assemblage of machines or mechanical apparatuses; the parts of a machine." *Id.*

Here, the phrase "equipment or machinery installed upon real property" in subdivision 1(e) is unambiguous: "equipment" refers to machinery or tools used in an operation or activity, or fixed assets other than land and buildings of a building enterprise. "Machinery" refers to an assemblage of machines or mechanical apparatuses with separate functions used in the performance of work. Applying the plain meaning of the statute, we conclude that the HRV satisfies the definition of either "equipment" or "machinery" because it is a highly engineered device consisting of fans, air filters, a heat-exchange core, a motor, and two ventilation openings that recover heat from and remove humidity in the home. We therefore conclude that Great Northern has met its burden to show that the HRV falls into the subdivision 1(e) exception.

Because our holding rests on a plain-language analysis of Minn. Stat. § 514.051, subd. 1(e), we do not find it necessary to look at caselaw to determine the plain meaning of the statute. But we elect to address McMillan's argument because, in addition to dictionary definitions, this court may consider precedent that has established the meaning of words in related contexts. *State v. Nelson*, 842 N.W.2d 433, 437-38 & n.2 (Minn. 2014).

McMillan relies on *Twinco Romax Auto. Warehouse, Inc. v. Olson Gen. Contractors, Inc.* and *Red Wing Motel Investors v. Red Wing Fire Dep't*, two cases where this court distinguished ordinary building materials from equipment or machinery under subdivision 1(e). 643 N.W.2d 338 (Minn. App. 2002), *review denied* (Minn. July 16, 2002); 552 N.W.2d 295, 296 (Minn. App. 1996), *review denied* (Minn. Oct. 29, 1996). As the manufacturer of the motor, McMillan argues that the HRV is akin to ordinary building materials because it was incorporated outside of McMillan's control into a home's ductwork and ventilation system.

In *Red Wing Motel*, this court analyzed whether pipes and sprinkler heads were

more like ordinary building materials or machinery or equipment under Minn. Stat. § 541.051, subd. 1(d) (1994).[1] 552 N.W.2d at 296. We noted that in carving out the statutory exception of Minn. Stat. § 541.051, subd. 1(e), the Minnesota Legislature intended to "distinguish building materials—'which are incorporated into construction work outside the control of their manufacturers or suppliers, at the direction of architects, designers, and contractors'—from machinery and equipment—which 'are subject to close quality control at the factory and may be made subject to independent manufacturer's warranties.'" *Id.* at 297 (quoting *Cape Henry Towers, Inc. v. Nat'l Gypsum Co.*, 229 Va. 596, 602, 331 S.E.2d 476, 480 (1985)). Because the sprinkler company provided the motel with ordinary building materials consisting of pipes and sprinkler heads, this court concluded that the exception to the statute of limitations did not apply. *Id.* at 297.

Six years later, this court revisited the issue in *Twinco Romax Automotive Warehouse*. Citing *Red Wing Motel*, we concluded that custom-made roof joists were subject to the statute of limitations because the joists were ordinary building materials. 643 N.W.2d at 342. We defined ordinary building materials as "those items that are essential to the existence of the building" such as "foundations, floors, windows, doors, roofs, and materials necessary to supporting roofs" as they are "items that are incorporated into construction work outside the control of their manufacturer or supplier, at the direction of architects, designers, and contractors." *Id.*

We find these cases to be factually distinguishable because an HRV that consists of an array of parts with separate functions is not like an unassembled sprinkler head or pipe, or like a custom roof joist. These are individual items that serve one function. Moreover, the plain language of subdivision 1(e) does not contemplate whether an item is incorporated into a building or not, and we assume that an unambiguous statute "manifest[s] legislative intent and must be given effect." *Allan*, 869 N.W.2d at 33. We also do not find that the plain-language analysis of subdivision 1(e) subsumes the plain meaning of subdivision 1(a).

McMillan also urges this court to consider *Integrity Flooring*, a decision from the Eighth Circuit Court of Appeals, in which the court held that a bathroom ventilation fan was an ordinary building material subject to the statute of repose. 521 F.3d at 921. But we are not persuaded by this decision as the court did not apply the plain meaning of subdivision 1(e), and a federal court's interpretation of Minnesota law is not binding upon this court. *See Moreno v. Crookston Times Printing Co.*, 610 N.W.2d 321, 330 (Minn. 2000).

Accordingly, we conclude that an HRV falls within the plain meaning of "equipment or machinery installed upon real property" under subdivision 1(e) and reverse the district court's grant of summary judgment on Great Northern's product-liability and breach-of-warranty claims against McMillan. We remand this matter to the district court for proceedings consistent with this opinion.

## II. McMillan had a post-sale duty to warn.

■ "The question of whether a legal duty to warn exists is a question of law for

1. In 2004, the legislature codified Minn. Stat. § 541.051, subd. 1(d), which held that "the limitations prescribed in this section do not apply to the manufacturer or supplier of any equipment or machinery installed upon real property" into subdivision 1(e) (2004), which is the current version of the statute.

the court—not one for jury resolution." *Germann v. F.L. Smithe Mach. Co.*, 395 N.W.2d 922, 924 (Minn. 1986). Minnesota has recognized that a continuing duty to warn of dangers associated with using a product arises only in "special cases." *Hodder v. Goodyear Tire & Rubber Co.*, 426 N.W.2d 826, 833 (Minn. 1988). But a legal continuing duty to warn is not rare. *Gardner v. Brillion Iron Works, Inc.*, 120 F.Supp.3d 928, 941 (D. Minn. 2014).

While there is no specific test for determining whether a post-sale duty to warn exists, *Hodder* cited several special circumstances in recognizing a tire manufacturer's duty to warn, including: (1) the defendant's knowledge of problems for years, including the knowledge that the product might explode with little provocation; (2) the hidden nature of the danger; (3) the fact that when explosions did occur, serious injury or death usually resulted; (4) the defendant remained in that line of business, continued to sell parts for use with the product, and had advertised the product within five years of the plaintiff's injury; and (5) the defendant had undertaken a duty to warn of product dangers. *Hodder*, 426 N.W.2d at 833.

■ Here, several circumstances weigh in favor of determining that McMillan had a post-sale duty to warn. First, McMillan knew of the possible fire hazard posed by the model 2355 motor sometime after 2003. Second, the potential danger was hidden. Third, while there were few fires, they caused significant property damage and could have easily resulted in death. The fourth and fifth circumstances weigh against finding a duty. While McMillan continued to manufacture motors, it stopped manufacturing the model 2355 motor in 1998 and did not advertise the product within five years of the fire at the Rueds' residence. McMillan refused to cooperate with Nutech in issuing a recall in

Canada and it did not participate in any recall of the motor in the United States.

■ Along with the *Hodder* circumstances, when determining whether a post-sale duty to warn exists, courts consider the burden of locating and warning purchasers of mass-produced and widely distributed products. The model 2355 motor was a mass produced, widely distributed motor that did not bear McMillan's name on the HRV. Nevertheless, we conclude that McMillan's failure to cooperate with Nutech does not and should not relieve it of the duty to take necessary "steps that are reasonable under the circumstances to disseminate widely notice of the danger." *McDaniel v. Bieffe USA, Inc.*, 35 F.Supp.2d 735, 742 (D. Minn. 1999). McMillan became aware of the potential fire hazard years before the Rueds' fire, and the gravity of potential harm to homeowners across North America cannot be ignored. *Hodder*, 426 N.W.2d at 833. Accordingly, we conclude that McMillan had a post-sale duty to warn customers of the potential fire hazard posed by the model 2355 motor. The questions of whether McMillan breached that duty, as well as causation, are fact questions for a jury to decide. We reverse and remand the district court's grant of summary judgment on this claim.

## DECISION

Because the HRV is a highly engineered device consisting of fans, air filters, a heat-exchange core, a motor, and two ventilation openings that recover heat from and remove humidity in the home, it satisfies the ordinary meaning of "equipment or machinery" under Minn. Stat. § 541.051, subd. 1(e). McMillan also had a post-sale duty to warn customers about the potential fire hazard posed by the model 2355 motor because it knew of the danger, the danger

was hidden, and the risk of fire posed a serious hazard to homeowners.

**Reversed and remanded.**